Gregory N. Karasik (SBN 115834)
**Karasik Law Firm**
11835 W. Olympic Blvd. Ste. 1275
Los Angeles, CA 90064
Tel (310) 312-6800
Fax (310) 943-2582
E-mail: greg@karasiklawfirm.com

Santos Gomez (SBN 172741)
Maria Esmeralda Vizzusi (SBN 289908)
**Law Offices of Santos Gomez**
1003 Freedom Boulevard
Watsonville, CA 95076
Tel: (831) 228-1560
Fax: (831) 228-1542
santos@lawofficesofsantosgomez.com
esmeralda@lawofficesofsantosgomez.com

Attorneys for Plaintiffs
REGINA GONZALES GOMEZ and
FIDEL GUERRERO COMOFORT

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| REGINA GONZALES GOMEZ, and FIDEL GUERRERO COMOFORT, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FERNANDEZ BROTHERS, INC. and DOES 1 through 10,<br><br>Defendants. | Case No. 5:17-cv-01863-EJD<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: May 24, 2018<br>Time: 9:00 a.m.<br>Ctrm: 4 |

Please take notice that, on May 24, 2018, at 9:00 a.m. or as soon thereafter as counsel may be heard, in Courtroom 4 of the San Jose Courthouse, located at 280 South 1st Street, San Jose, California, plaintiffs Regina Gonzales Gomez and Fidel Guerrero Comofort ("Plaintiffs") will and hereby do move for an order granting final approval of the class action settlement (the "Settlement") reached with defendant Fernandez

Brothers, Inc. ("Defendant") that was preliminarily approved by the Court on January 3, 2018. Specifically, Plaintiffs move for an order:

1. Granting final approval of the Settlement and finding the terms of the Settlement to be fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure, including the amount of the settlement fund; the amount of distributions to class members; the procedure for giving notice to class members; the procedure for objecting to or opting out of the Settlement; and the maximum amounts allocated to an incentive payment, costs and attorney's fees.

2. Certifying for settlement purposes the Settlement Class described in the Settlement, comprised of all persons who, at any time between April 4, 2013 and September 14, 2017, worked for Defendant as a seasonal agricultural worker who performed field work harvesting strawberries.

3. Finding that class members were provided proper and adequate notice of their rights in a manner that satisfies the requirements of due process.

4. Directing that all class members who did not timely file a request for exclusion from the Settlement are barred from prosecuting against the Released Parties any and all released claims as set forth in the Settlement.

5. Directing that Defendant make a payment into the settlement fund, in accordance with the procedures set forth in the Settlement, of the amount needed to fund all amounts payable under the Settlement.

6. Directing payment from the settlement fund of settlement administration fees to Atticus Administration in the amount of $10,000 in accordance with the Settlement.

7. Awarding Plaintiffs the amount of $320,000 for reasonable attorney's fees, to be paid from the settlement fund in accordance with the procedures set forth in the Settlement.

  8. Awarding Plaintiffs the amount of $5,108.12 for reasonable litigation costs, to be paid from the settlement fund in accordance with the procedures set forth in the Settlement.

  9. Awarding Plaintiffs the amount of $10,000 each as a class representative enhancement payment, to be paid from the settlement fund in accordance with the procedures set forth in the Settlement.

  10. Entering a final judgment dismissing the action with prejudice.

  11. Providing that, notwithstanding entry of final judgment, the Court shall retain jurisdiction in this matter for the purposes of interpreting or enforcing the Settlement or final judgment.

Plaintiffs' motion is made under Rule 23 of the Federal Rules of Civil Procedure on the grounds that the Settlement is fair, reasonable and adequate; in accordance with due process, class members were provided notice of their rights under the Settlement in a reasonable manner and were given a reasonable opportunity to exclude themselves from the Settlement.

Plaintiffs' motion is based on this Notice and attached Memorandum of Points and Authorities, the Declarations of Gregory N. Karasik, Santos Gomez, Regina Gonzales Gomez, Fidel Guerrero Comofort and Mai C. Vang submitted herewith; all other pleadings and papers on file in this action; and any oral argument or other matter that may be considered by the Court.

Dated: April 19, 2018       KARASIK LAW FIRM

             By /s/ Gregory N. Karasik
                Gregory N. Karasik
                Attorneys for Plaintiff

Gregory N. Karasik (SBN 115834)
**Karasik Law Firm**
11835 W. Olympic Blvd. Ste. 1275
Los Angeles, CA 90064
Tel (310) 312-6800
Fax (310) 943-2582
E-mail: greg@karasiklawfirm.com

Santos Gomez (SBN 172741)
Maria Esmeralda Vizzusi (SBN 289908)
**Law Offices of Santos Gomez**
1003 Freedom Boulevard
Watsonville, CA 95076
Tel: (831) 228-1560
Fax: (831) 228-1542
santos@lawofficesofsantosgomez.com
esmeralda@lawofficesofsantosgomez.com

Attorneys for Plaintiffs
REGINA GONZALES GOMEZ and
FIDEL GUERRERO COMOFORT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| REGINA GONZALES GOMEZ, and FIDEL GUERRERO COMOFORT, individually and on behalf of others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>FERNANDEZ BROTHERS, INC. and DOES 1 through 10,<br><br>　　　　　Defendants. | Case No. 5:17-cv-01863-EJD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: May 24, 2018<br>Time: 9:00 a.m.<br>Ctrm: 4 |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

LITIGATION HISTORY ............................................................................................................ 1

SUMMARY OF SETTLEMENT TERMS .................................................................................. 2

ARGUMENT ................................................................................................................................ 3

I.    THE SETTLEMENT MERITS FINAL APPROVAL .................................................... 3

        A.    The Strength Of Plaintiffs' Case ........................................................................... 3

        B.    The Risk, Expense, Complexity And Likely Duration Of Further Litigation ............................................................................................................... 4

        C.    The Risk Of Maintaining Class Action Status ..................................................... 4

        D.    The Amount Offered In Settlement ...................................................................... 5

        E.    The Extent Of Discovery Completed And The Stage Of The Proceedings .......................................................................................................... 5

        F.    The Experience And Views Of Counsel ............................................................... 6

        G.    The Reaction Of Class Members To The Settlement ........................................... 6

II.    THE AMOUNT OF ATTORNEY'S FEES REQUESTED BY PLAINTIFFS IS REASONABLE ....................................................................................................... 6

III.    THE AMOUNT OF ENCHANCEMENT PAYMENT REQUESTED BY PLAINTIFFS IS REASONABLE ........................................................................ 9

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

## CASES

Class Plaintiffs v. Seattle
(9th Cir. 1992) 955 F.2d 1268 ..................................................................................4

Craft v. County of San *Bernardino*
(C.D. Cal. 2008) 624 F.Supp.2d 1113......................................................................7

Glass v. UBS Financial Services, Inc.
(N.D. Cal. 2007) 2007 WL 221862 .........................................................................8

Hanlon v. Chrysler Corp.
(9th Cir. 1998) 150 F. 3d 1011 ............................................................................3,7

HCL Partners Ltd. Partnership v. Leap Wireless Intern., Inc.
(S.D. Cal. 2010) 2010 WL 4156342.........................................................................7

In re Cedant Corp., Derivative Action Litigation
(D. N.J. 2002) 232 F. Supp.2d 327 ..........................................................................5

In re Immune Response Securities Litigation
(S.D. Cal. 2007) 497 F. Supp.2d 1166.....................................................................5

In re Lifelock, Inc. Marketing and Sales Practices Litigation
(D. Ari. 2010) 2010 WL 3715138 ...........................................................................6

In re Mfrs. Life Ins.
(S.D. Cal. 1998) 1998 WL 1993385 ........................................................................8

In re Pacific Enterprises Security Litigation
(9th Cir. 1995) 47 F.3d 373 .....................................................................................7

In re Syncor ERISA Litigation
(9th Cir. 2008) 516 F3d 1095 ..................................................................................8

Lewis v. Starbucks Corp.
(E.D. Cal. 2008) 2008 WL 4196690........................................................................8

Linney v. Cellular Alaska Partnership
(N.D. Cal 1997) 1997 WL 450064 ..........................................................................6

Molski v. Gleich
(9th Cir. 2003) 318 F.3d 937 ...................................................................................3

Nat'l Rural Telecommons. Coop. v. Direct TV, Inc.
(C.D. Cal. 2004) 221 F.R.D. 523 .............................................................................4

Pacific Enterprises
(9th Cir. 1989) 886 F.2d 268....................................................................................7

Paul, Johnston, Alston & Hunt v. Graulty
(9th Cir. 1989) 886 F.2d 268.................................................................................6,8

Reynolds v. National Football League
  (8th Cir. 1978) 584 F3d. 280 ............................................................................6

Rodriguez v. West Publishing Corp.
  (9th Cir. 2009) 563 F.3d 948 .............................................................................9

Six (6) Mexican Workers v. Arizona Citrus Growers
  (9th Cir. 1990) 904 F.2d 1301 ...........................................................................6

Staton vs. Boeing Co.
  (9th Cir. 2003) 327 F.3d 938 ..........................................................................7,8

Van Bronkhorst v. Safeco Corp.
  (9th Cir. 1976) 529 F.2d 943 .............................................................................3

Vizcaino v. Microsoft Corp.
  (9th Cir. 2002) 290 F.3d 1043 .......................................................................7,8

Vasquez v. Coast Valley Roofing, Inc.
  (E.D. Cal. 2010) 266 F.R.D. 482 ..................................................................3,6,7

West v. Circle K. Stores, Inc.
  (E.D. Cal. 2006) 2006 U.S. Dist. LEXIS 767558 ..............................................6

Wren v. RGIS Inventory Specialists
  (N.D. Cal. 2011) 2011 WL 1230826 ................................................................9

**STATUTES**

Labor Code
  Section 226.7 ....................................................................................................5

**RULES**

Federal Rules of Civil Procedure
  Rule 23(e) ..........................................................................................................1
  Rule 23(h) ..........................................................................................................1

## INTRODUCTION

On January 3, 2018, this Court granted preliminary approval of the class action settlement reached by plaintiffs Regina Gonzales Gomez and Fidel Guerrero Comofort ("Plaintiffs") with defendant Fernandez Brothers, Inc. ("Defendant"). Following preliminary approval, the Court approved Class Notice was mailed to 1,054 class members and, in response, not a single class member has objected to the Settlement and not a single class member has requested exclusion from the Settlement. (Karasik Decl. ¶ 9). Plaintiffs now move under Rules 23(e) and (h) of the Federal Rules of Civil Procedure for final approval of the Settlement and for an award of costs, fees and enhancement payments. As set forth below, the Settlement is fair, adequate and reasonable, and the amounts of costs, fees and enhancement payments requested by Plaintiffs are reasonable. Plaintiffs respectfully request that the Court grant final approval and award Plaintiffs the full amount of costs, fees and enhancement payments requested.

## LITIGATION HISTORY

Plaintiffs commenced this action on April 4, 2017. Plaintiffs principally contend that Defendant failed to pay agricultural workers who harvest strawberries ("Strawberry Workers") all the wages owed to them for rest period and other non-productive time and that Defendant failed to provide Strawberry Workers with second rest periods when they worked between six and seven and one-half hours in a workday. On the basis of these central allegations, Plaintiffs assert claims for Failure to Pay Minimum Wages, Failure to Pay All Wages Owed for Rest Period Time, Failure to Provide Second Rest Periods, Unfair Competition, Failure to Provide Accurate Wage Statements, Failure to Pay All Wages Upon Termination, and Failure to Comply with the Migrant and Seasonal Agricultural Workers Protection Act ("AWPA") (Karasik Decl. ¶ 6).

At the outset of litigation, the parties agreed to participate in a private mediation and suspend formal discovery. The mediation was held on September 14, 2017 before

the Hon. Alex Saldamando (Ret.). Prior to the mediation, Defendant informally provided Plaintiffs' counsel all the information they needed, together with the substantial amount of information about Defendant's practices Plaintiffs' counsel had obtained from pre-filing investigation, for intelligently assessing Defendant's liability and calculating damages. Information provided by Defendant included the number of shifts worked by class members and their average wage rate. After the mediation resulted in tentative agreement to the material terms of a class action settlement, the parties, after further negotiations regarding settlement details, executed a formal settlement agreement and the Court granted preliminary approval of the Settlement on January 3, 2018.

## SUMMARY OF SETTLEMENT TERMS

The material terms of the Settlement are as follows:

- The Settlement Class is comprised of all persons who, at any time between April 4, 2013 and September 14, 2017 (the "Class Period"), worked for Defendant as a seasonal agricultural worker who performed field work harvesting strawberries. There are 1,054 class members.

- Defendant will pay the Gross Settlement Amount of $1,280,000 on a non-reversionary basis. Class members are not required to submit claims to receive settlement benefits. Defendant shall pay the employer's share of payroll taxes on the portion of settlement benefits allocated to wages separately from the Gross Settlement Amount.

- After all required deductions are made from the Gross Settlement Amount, the Net Settlement Amount of approximately $920,000 will be distributed to class members. Each class member who is not excluded from the Settlement will receive a portion of 50% of the Net Settlement Amount based on the number of shifts worked for Defendant during the Class Period and an equal pro-rata share of 50% of the Net Settlement Amount.

- Defendant will not oppose an application by Plaintiff for an award of attorney's fees of up to $320,000 (25% of the Gross Settlement Amount) or an award of litigation costs up to $7,500.
- Defendant will not oppose an application by Plaintiffs for an enhancement award of up to $10,000 each.

## ARGUMENT

### I. THE SETTLEMENT MERITS FINAL APPROVAL

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cots, and rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.* (9th Cir. 1976) 529 F. 2d 943, 950.

Rule 23(e)(2) of the Federal Rules of Civil Procedures provides that a court may approve a settlement of a class action when it finds that the settlement is "fair, reasonable, and adequate." The following factors are relevant to this determination: 1) the strength of the plaintiff's case; 2) the risk, expense, complexity, and likely duration of further litigation; 3) the risk of maintaining class action status throughout the trial; 4) the consideration offered in settlement; 5) the extent of discovery completed, and the stage of the proceedings; 6) the experience and views of counsel; and 7) the reaction of the class to the proposed settlement. *Molski v. Gleich* (9th Cir. 2003) 318 F. 3d 937, 953; *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1026. In this case, each of these factors weighs in favor of granting final approval to the Settlement.

#### A. The Strength Of Plaintiffs' Case

Assessing the strength of a plaintiff's case involves weighing the merits against the settlement amount and potential recovery. *Van Bronkhorst,* 529 F.2d at 950. *See also, Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010) 266 F.R.D. 482, 488. A district court need not, however, "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of

outcome in the litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs v. Seattle* (9th Cir. 1992) 955 F.2d 1268, 1291.

Here, Plaintiffs' principal claims that Defendant failed to pay minimum wages for rest periods or other "non-productive" time and that Defendant failed to provide second rest periods are, in the opinion of Plaintiffs' counsel, very strong. But, as discussed below, Plaintiffs achieved a settlement that provides for recovery of more than 100% of their allegedly unpaid wages. Comparing the settlement amount with potential recovery weighs strongly in favor of granting final approval to the Settlement

### B. The Risk, Expense, Complexity And Likely Duration Of Further Litigation

Continued litigation of this case would have exposed Plaintiffs to substantial expense and risk. In the absence of settlement, Plaintiffs ran the risk of losing a contested motion for class certification or on the merits at trial. In either event, Plaintiffs would not have achieved anything for class members. Plaintiffs also faced the prospect of lengthy and expensive discovery with respect to the merits of their claims. Among other issues, continued litigation would likely have involved expensive and lengthy disputes regarding Plaintiffs' discovery of class member contact information, personnel records, and/or other employment records. The prospect of "lengthy and expensive litigation with uncertain results" supports settlement. *See, Nat'l Rural Telecommons. Coop v. DirectTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523, 526.

### C. The Risk Of Maintaining Class Action Status

While Defendant has not objected to class certification for the purposes of settlement, district courts have wide discretion when it comes to determining the propriety of a class action and it remained to be seen how the Court would have ruled on a contested motion for class certification in the absence of a settlement. Moreover, even if Plaintiffs prevailed on an initial motion for class certification as they expected, Plaintiffs faced the risk of a motion by Defendant for decertification based on changed

circumstances or legal developments. The uncertainty regarding how the class certification issue would have been decided if litigated supports final approval of the Settlement.

### D. The Amount Offered In Settlement

In the opinion of Plaintiffs' counsel, the Settlement reflects an excellent result. Based on the data received from Defendant, Plaintiffs' counsel calculated that Defendant's maximum potential liability for unpaid wages and premium wages allegedly owed under Labor Code Section 226.7 was, at most, approximately $650,000. Pursuant to the Settlement, Defendant will pay a Gross Settlement Amount equal to more than full recovery of allegedly unpaid wages plus an additional amount of approximately $620,000 attributable to penalties. In light of the risks and uncertainty of continued litigation, the result obtained by Plaintiffs – more than 100% of their likely maximum recovery of damages – clearly achieved a fair settlement well within the range of reasonable outcomes that merits approval. *See, In re Cedant Corp., Derivative Action Litigation* (D. N.J. 2002) 232 F. Supp.2d 327 (approving settlement which provided 2% value compared to maximum possible recovery).

### E. The Extent Of Discovery Completed And The Stage Of The Proceedings

The parties reached a Settlement in good faith after engaging in sufficient informal discovery and then negotiating at arms-length during a mediation conducted by an extremely experienced and well-respected mediator. Although the parties agreed to mediate before completing all possible formal discovery, approval of a class action settlement does not require that discovery be exhaustive. *See, e.g., In re Immune Response Securities Litigation* (S.D. Cal. 2007) 497 F.Supp.2d 1166, 1174 (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases). The fact that settlement results from arms-length negotiations following "relevant discovery" creates "a presumption that the agreement

is fair." *Linney v. Cellular Alaska Partnership* (N.D. Cal 1997) 1997 WL 450064, at *5. Here, there is no dispute that the parties' settlement negotiations were conducted at arms-length in good faith after sufficient informal discovery enabled the parties to intelligently assess the strengths or weaknesses of their case.

### F. The Experience And Views Of Counsel

The opinions of experienced class counsel are entitled to "considerable weight." *West v. Circle K. Stores, Inc.* (E.D. Cal. 2006) 2006 U.S. Dist. LEXIS 767558, *17-18. *See also, Vasquez*, 266 F.R.D. at 489 (courts should give great weight to counsel's recommendations). Plaintiffs' counsel have substantial experience litigating class actions in general and wage and hour class actions in particular. Their opinion that the Settlement is fair and reasonable, and that final approval of the Settlement would best serve the interests of class members (Karasik Decl. ¶ 11; Gomez Decl. ¶ 7), weighs strongly in favor of final approval.

### G. The Reaction Of Class Members To The Settlement

Not a single class member opted out of the Settlement and not a single class member has objected to the Settlement. (Karasik Decl. ¶ 9). The overwhelmingly positive reaction from the class supports final approval. *See, e.g., Reynolds v. National Football League* (8th Cir. 1978) 584 F.3d 280 (16 objectors out of 5,400 class members provided strong evidence of no significant dissatisfaction with settlement); *In re Lifelock, Inc. Marketing and Sales Practices Litigation* (D. Ari. 2010) 2010 WL 3715138, *6 (relatively few objections and requests for exclusion support approval).

## II. THE AMOUNT OF ATTORNEY'S FEES REQUESTED BY PLAINTIFFS IS REASONABLE

The Ninth Circuit has established the rate of 25% as the "benchmark" for an award of attorney's fees under the percentage of the fund approach in common fund cases. *See, Paul, Johnston, Alston & Hunt v. Graulty* (9th Cir. 1989) 886 F.2d 268, 272; *Six (6) Mexican Workers v. Arizona Citrus Growers* (9th Cir. 1990) 904 F.2d 1301, 1311;

*Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1029; *In re Pacific Enterprises Security Litigation* (9th Cir. 1995) 47 F.3d 373, 379; *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1047; *Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 968.

Here, the common fund is $1,280,000 and Plaintiffs requests fees equal to 25% of the common fund. There is no reason for awarding Plaintiffs attorney's fees equal to a percentage of the common fund lower than the benchmark rate. Plaintiffs obtained an excellent result in this case – recovery of more than 100% of their allegedly unpaid minimum and premium wages – with extreme efficiency. Obtaining such a good result so quickly, in a case taken purely on a contingency basis that could have resulted in a negative result and zero recovery, actually militates in favor of an upwards adjustment of the benchmark rate. *See, Hanlon,* 150 F.3d at 129 (discussing factors that warrant increase in benchmark rate); *Pacific Enterprises*, 47 F.3d at 379 (approving 33.3% rate) *Vizcaino*, 290 F.3d at 1048 (28% rate justified because plaintiff achieved "exceptional results") *Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010) 266 F.R.D. 482, 492 (33.3% rate justified by "good result achieved for Plaintiffs, the risk counsel took in pursuing the matter, and the skill they exhibited in prosecuting the case").

In light of the superior result obtained by Plaintiffs' counsel so efficiently in this case, a downwards adjustment of the benchmark rate based on a lodestar cross check would unfairly penalize Plaintiffs' counsel for achieving an excellent result with maximum efficiency and thus conflict with the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litigation* (9th Cir. 2008) 516 F3d 1095, 1101. It is for this reason that, when a class action plaintiff requests a fee within the 25% benchmark, "a lodestar analysis is not necessary." *HCL Partners Ltd. Partnership v. Leap Wireless Intern., Inc.* (S.D. Cal. 2010) 2010 WL 4156342, at *2. *See also, Craft v. County of San Bernardino* (C.D. Cal. 2008) 624 F.Supp.2d 1113, 1122 ("a lodestar cross check is not required in this circuit"). The Ninth Circuit has cautioned that, while a lodestar method can be used

as a cross check on the reasonableness of fees based on a percentage of recovery method if a district court in its discretion chooses to do so, <u>a lodestar calculation is not required</u> and it did "not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly." *Vizcaino*, 290 F.3d at 1050, n.5. In accordance with Ninth Circuit precedents, district courts within the Ninth Circuit have often recognized that a lodestar cross check need not be performed where plaintiff's counsel achieves a significant result through an early settlement. *See, e.g. Lewis v. Starbucks Corp.* (E.D. Cal. 2008) 2008 WL 4196690 (appropriate to calculate attorney's fees on basis of common fund theory and not lodestar where settlement achieved at relatively early stage of litigation); *Glass v. UBS Financial Services, Inc.* (N.D. Cal. 2007) 2007 WL 221862 (court declined to conduct a lodestar cross check, and approved a request for fees based only on the percentage of recovery method, because it recognized that premising attorney's fees on a lodestar calculation would have unfairly penalized plaintiff's counsel for settling the case without protracted litigation); *In re Mfrs. Life Ins*. (S.D. Cal. 1998) 1998 WL 1993385 (court concluded that lodestar analysis was unnecessary and attorney's fee was reasonable solely on percentage-recovery method).

Moreover, a lodestar calculation under the circumstances of this case would undermine the equitable considerations that dictate the percentage of recovery method for calculating attorney's fees in common fund cases. The percentage of recovery method "rests on the presumption that persons who obtain benefits of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Staton*, 327 F.3d at 967. This rule, known as the "common fund doctrine," is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of others. *Paul, Johnston*, 886 F.2d at 271.

It is only fair that every class member who receives a share of settlement benefits pay his or her pro rata share of attorney's fees. Plaintiffs' request for fees at the benchmark rate of 25% achieves this equitable result. But if Plaintiffs are awarded a

lower amount of fees as a result of a lodestar cross check, the class members receiving settlement benefits will not have to pay their fair share of fees. Lowering a fee award to Plaintiffs' counsel would result in the unjust enrichment of class members by giving them the benefit of the legal services provided by Plaintiffs' counsel – that resulted in achieving recovery of more than 100% of their alleged damages - at less than fair cost.

Plaintiffs' request for fees already gives class members a significant discount on the market rate for attorney's fees. By only seeking fees at the rate of 25% of the Gross Settlement Amount, Plaintiffs seek an amount of fees substantially less than the amount Plaintiffs' counsel would be entitled to receive if they represented each class member individually. The regular contingent fee contracts of Plaintiffs' counsel provide for attorney's fees between 35% and 40% of any recovery obtained for the client. (Karasik Decl. ¶ 16). It would be unfair to compensate Plaintiffs' counsel at a lesser rate because they obtained relief for a thousand class members instead of a sole plaintiff. Equitable considerations dictate that Plaintiffs' counsel not be penalized but be rewarded for achieving a settlement that confers benefits among so many people, especially without protracted litigation. The excellent result achieved by Plaintiffs' counsel merits an award of attorney's fees equal to 25% of the common fund in this case without any lodestar consideration or cross check.

### III. THE AMOUNT OF ENHANCEMENT PAYMENTS REQUESTED BY PLAINTIFFS IS REASONABLE

Plaintiffs have requested enhancement payments in the amount of $10,000 each. These requests comport with ample precedent. "It is well established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service payments." *Wren v. RGIS Inventory Specialists* (N.D. Cal. 2011) 2011 WL 1230826, at *31. As the Ninth Circuit has observed, incentive payments to named plaintiffs are now "fairly typical." *Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 958.

The enhancement amount requested by Plaintiffs is and deserved because Plaintiffs undertook the risk and burden of litigation, including the risks of having to pay costs and attorney's fees and the risk of blacklisting for suing an employer. Moreover, as set forth in their declarations, Plaintiffs communicated with counsel on numerous occasions, assisted counsel with discovery and investigation, and participated in the mediation on September 14, 2017. The amount of enhancement sought by Plaintiffs is commensurate with amounts typically awarded in wage and hour class action settlements of comparable magnitude. (Karasik Decl. ¶ 13).

## CONCLUSION

Plaintiffs obtained a Settlement that provides more than 1,000 class members exceptionally good value – more than 100% of the maximum amount of their allegedly unpaid wages plus a significant amount for penalties that are difficult to recover and often add no or little value to a settlement. Since the Settlement is fair, reasonable and adequate in all respects, the Court should grant Plaintiffs' motion for final approval of the Settlement, award Plaintiffs all the costs, fees and enhancement payments requested, and adopt the proposed order submitted herewith.

Dated: April 19, 2018

KARASIK LAW FIRM
LAW OFFICES OF SANTOS GOMEZ

By  /s/ *Gregory N. Karasik*
Gregory N. Karasik
Attorneys for Plaintiffs